STATE v. SHULER.

An indictment that charges the stealing of corn ."in the field," is fatally
defective as an indictment under a statute which makes stealing "from
the field" a felony.

Before PRESSLEY, J., Orangeburg, October, 1882.

This was an indictment against Adam Shuler. The opinion
states the case.

*Mr. Solicitor Jervey*, for appellant.

*Mr. D. A. Straker*, contra.

March 27th, 1883. The opinion of the court was delivered by
MR. JUSTICE MCIVER. The defendant was indicted under
section 2487, General Statutes of 1882, for stealing corn " in the
field " of one Riley, and upon conviction moved in arrest of
judgment, because the indictment was fatally defective in that it
charged that the corn was stolen " in the field," instead of
" from the field," in the language of the statute. The Circuit
judge refused to arrest the judgment on the ground that the
indictment was good as an indictment for petit larceny, the
property stolen being under the value of twenty dollars, but held
that the indictment was defective under the statute, in that it did
not contain the words used in the statute—" from the field "—
and accordingly sentenced the defendant for petit larceny. The
State appeals from this ruling, upon the ground that the offense,
which was made a felony by the statute, was sufficiently set forth
in the indictment.

For a proper understanding of the question raised by this
appeal, a brief review of the legislation upon this subject will be
instructive. As far back as 1826 (6 *Stat.* 284) the legislature,
impressed with the necessity for providing a remedy for what
was, doubtless, a growing evil, passed an act for the purpose of
making it larceny to steal any grain or cotton—the staple pro-

ducts of the State—before it was severed from the soil upon which it grew, inasmuch as, by the common law, that species of property was not the subject of larceny, being regarded as part of the realty. It is curious to observe that, while the title of that act expressly pointed to the conclusion that the object was to punish, criminally, that which, by the common law, would have been a mere trespass, to wit, the taking of corn or grain before it was severed from the soil, the body of the act contained no such pointed words. The title is as follows: "An act to make the fraudulent and secret taking of cotton, corn and other grain, before severance from the soil, larceny," while the language of the body of the act is as follows: "If any person shall take from any field, not belonging to such person, any cotton, corn, rice, or other grain, fraudulently, with intent secretly to convert the same to the use of such person taking the same, such person, so offending, shall be guilty of larceny, either grand or petit, as the value of the property may be."

In 1866 (13 *Stat.* 405) the legislature passed an act to amend the criminal law, by the fourth section of which the offense created by the foregoing act was prohibited in the following language: "Stealing from the field any grain or cotton, not yet severed from the freehold, is hereby made a felony with benefit of clergy." This change of phraseology from that found in the act of 1826 was, doubtless, mainly for the purpose not only of increasing the grade of the offense, but also for the purpose of making it plain that the object was to punish the fraudulent taking of grain or cotton from the field, even though it had not been severed from the soil at the time it was taken, inasmuch as, in the body of the previous act, nothing had been said as to severance from the soil.

In 1872, when the General Statutes of that year was adopted, the fourth section of the act of 1866 was incorporated therein without any substantial change in its language.

In 1879 (17 *Stat.* 77) the legislature, perhaps under the apprehension that offenders might often escape, by reason of the difficulty of proving that the grain or cotton had not been severed from the freehold at the time of the taking, amended the act so as to make it a felony to steal cotton or grain from the

field, whether severed from the freehold or not, and in this form the act was incorporated in the General Statutes of 1882 as section 2487, which reads as follows : "Whoever shall steal from the field any grain or cotton, whether severed from the soil or not, shall be deemed guilty of felony; and, on conviction thereof, shall be punished by imprisonment in the penitentiary for not less than one year nor more than five years, or in the jail for not less than three months nor more than six months, or by fine, not less than fifty dollars nor more than five hundred dollars."

From this review of the legislation upon the subject, we think it plain that the true intent of the act was not to punish the stealing of the particular kind of property there mentioned in a particular place, but to punish the stealing of a particular kind of property, to wit : the products of the soil mentioned in the act —the staple products of the State—before they were gathered by the owner, inasmuch as that kind of property would necessarily be more exposed to the depredations of thieves than that which the owner had the means of guarding and protecting more securely, just as the legislature, doubtless actuated by the same motive, has, from time to time, made the larceny of cattle and other live stock, which were accustomed to roam at large beyond the reach of the owner's protecting care, the subject of special legislation.

We think, therefore, that the real purpose in using the words "from the field," was to point to a particular kind of property, to wit : the products of, or outgrowth from the field, of the kind designated, before they were gathered by the owner, and not to the stealing of that kind of property in any particular locality. Thus, if a bag of corn, taken from the owner's barn, or purchased in market, should be carelessly left by him in an open field, and stolen while in such field, the offender could not be indicted under this section of the general statutes because that would not, in our judgment, be the offense there denounced. The object of the statute was not to protect, specially, property which the owner had thus carelessly exposed to the depredations of thieves, because the common law afforded sufficient protection for that kind of property by an ordinary indictment for larceny,

but the object was to extend special protection to a kind of property which the owner could not so carefully guard and protect from theft, as it must necessarily remain exposed in an open field until it could be gathered.

Under this view of the scope and intent of the statute, it is very obvious that the word "from," as used in the act, is a material word, and the word "in," used in the indictment, cannot be regarded as a sufficient substitute for it, and, therefore, the indictment was properly adjudged to be fatally defective, as an indictment under the statute. This court has so recently considered the rule as to how far it is necessary to follow the words of a statute, in an indictment for an offense created by such statute, in the case of *State* v. *Padgett*, 18 *S. C.* 317, where Mr. Justice McGowan has very fully and satisfactorily discussed the subject, that we do not deem it necessary to go into that matter now further than to say that it is well settled that an indictment under a statute must follow the material words found in the statute, or use words which are substantially equivalent thereto.

The judgment of this court is that the judgment of the Circuit Court be affirmed.